**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ABS BROKERAGE SERVICES, LLC, ET AL., | |
| Plaintiffs, | Civ. No. 09-4590 (DRD) |
| v. | **O P I N I O N** |
| PENSON FINANCIAL SERVICES, INC., | |
| Defendant. | |

*Appearances by:*

LOWENSTEIN SANDLER, P.C.
by: Douglas S. Eakeley, Esq., Karl Greenfield, Esq., and Alan S. Modlinger, Esq.
65 Livingston Avenue
Roseland, NJ 07068

  *Attorneys for Plaintiffs*

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.
by: Leo V. Leyva, Esq.
25 Main Street
Hackensack, NJ 07601

MAYER BROWN, LLP
by: Mark Cuccaro, Esq., Adam Goldstein, Esq., and Mark G. Hanchet, Esq.
1675 Broadway
New York, NY 10019

  *Attorneys for Defendant*

**DEBEVOISE, Senior District Judge**

This matter comes before the Court on a Motion to Vacate an arbitration award submitted by Plaintiffs, ABS Financial Services, LLC ("ABS"), Pro Securities, LLC, and ISERoute, LLC. Although they acknowledges that the award at issue was made pursuant to a valid agreement between the parties, Plaintiffs contends that the Court should exercise its power under Section 10 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10(a), to overturn the award because the arbitrators exceeded their authority and acted in manifest disregard of the relevant law and facts. Citing the high degree of deference given to such awards by federal courts, Defendant Penson Financial Services, Inc. ("Penson") cross-moves to confirm the arbitration award.[1]

For the reasons set forth below, Plaintiffs' Motion to Vacate the arbitration award will be denied, and Penson's cross-Motion to Confirm that award will be granted. The standard of review applicable to arbitration awards is highly deferential, and does not allow this Court to reconsider the merits of an arbitration panel's decision. Plaintiffs may be correct in their contention that the ruling in this case – which was issued without an accompanying opinion or any other explanation – suffered from deficiencies. However, the Court is unable to say with certainty that the arbitrators exceeded their powers. Therefore, it cannot reverse their decision pursuant to 9 U.S.C. § 10(a), and must confirm the arbitration award.

---

[1] Plaintiffs are corporations formed under the laws of New Jersey, and have their principal places of business in that state. Penson is a North Carolina corporation with headquarters in Texas. Therefore, because the amount in controversy exceeds $75,000, this Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I. BACKGROUND

Plaintiffs are registered securities broker-dealers. Their business activities consist of "executing" trades on behalf of "routing brokers" – another type of securities broker that accepts orders from individual customers to buy or sell specific securities. After a routing broker accepts such an order, the request is passed to an "executing broker." The executing broker matches that order with one submitted by another party seeking to buy the security being sold or vice versa, sometimes referred to as a "contra," and the transaction between the parties is consummated. In modern securities trading, the execution of trades is generally carried out extremely quickly through the use of electronic systems – in some cases the entire process would appear to be virtually instantaneous to the individual buyer or seller submitting an order to his or her routing broker.

After an executing broker completes a trade, it forwards a record of that transaction to a "clearing broker." The clearing broker, in turn, logs those records with a national organization devoted to tracking trades, such as the National Securities Clearing Corporation ("NSCC"), which processes the data contained in the disparate transactions it receives and transmits overarching information on the price movement of various securities and the cash holdings of the companies issuing those instruments back to the clearing brokers. The clearing broker profits by charging the executing broker a small fee for each of the transactions it processes.

In calculating the fees charged for their services, some clearing brokers follow a practice known as "compression." Under that method, orders submitted by executing brokers on behalf of the same party for the same security on the same day are consolidated for recordkeeping purposes into one "average price ticket." Thus, if an individual submits an order for 100 shares of a security at one dollar per share and later during the same day submits an order for an

additional 100 shares at $1.20 per share, the order will be compressed into an average price ticket for 200 shares at $1.10 each. Rather than seeking remuneration for processing the two transactions individually, the clearing broker will construe the entire average price ticket as one transaction, and will charge the executing broker accordingly.

Penson is a clearing broker. On November 6, 2006, it entered into a contract with ABS under which it agreed to clear trades executed by that company in exchange for a fee of $0.35 per average price ticket. ABS agreed to reimburse Penson for any fees charged by the NSCC, on the condition that Penson would reduce its fees to account for any discount, rebate or price reduction related to the trades cleared on behalf of ABS that it received from the NSCC during the term of the contract. Additionally, ABS agreed to provide a deposit of $50,000, to be refunded on termination of the contract, minus any outstanding fees owed to Penson at that time. The other Plaintiffs entered into contracts with Penson in December 2006 that were identical except that they provided for a deposit of $60,000.

The contracts between Plaintiffs and Penson included an arbitration clause, which stated that, "[i]n the event of a dispute between the parties, such dispute shall be settled by arbitration." (Def.'s Br. Supp. Mot. Confirm, Decl. of Mark Cuccaro ("Cuccaro Decl."), Exs. 1-3 at ¶ 20(g).) The arbitration clause went on to state that the ruling of the arbitration panel would be "be final and binding between the parties and judgment thereon may be entered by any court of competent jurisdiction." (Id.) Additionally, the contracts included a provision stating that they could "be modified only in a writing signed by both parties." (Id. at ¶ 20(c).) Regarding the construction of their terms, the contracts provided that they would be interpreted in accordance with "the statutory and common law of the state of Texas." (Id. at ¶ 20(f).)

On July 10, 2008, the Plaintiffs initiated an arbitration in which they alleged that Penson had breached the aforementioned contracts in three ways during the period from November 1, 2007 and the termination of the parties' relationship at the end of June 2008.[2]  First, they claimed that Penson had impermissibly based the fees it charged on the number of individual orders submitted for clearing rather than the number of average price tickets derived from those orders. Based on that practice, Plaintiffs paid Penson a total of $1,360,851 in clearing fees.  Plaintiffs claimed that, had they been charged based on the average price tickets submitted rather than each individual order, that amount would have been $540,044.  Therefore, they sought the difference of $820,806 as compensatory damages for the alleged overbilling.  Additionally, Plaintiffs alleged that Penson had failed to reimburse them for $292,000 in rebates it received from the NSCC.  Finally, they contended that Penson violated the agreements by refusing to return their deposits – a combined total of $170,000 – after those contracts expired.  In addition to their breach of contract claims, Plaintiffs also asserted that Penson had committed fraud by promising throughout the relationship between the parties that they would be billed based on the number of average price tickets when it actually intended to use the number of individual orders submitted for clearing as the basis for its fees.

In response to those claims, Penson asserted that the parties, in an effort to alleviate technical difficulties that arose in calculating the number of average price tickets, had orally modified their agreements in May 2006 to provide that Plaintiffs would be billed based on the number of individual orders submitted for clearing.  In order to approximate the amount that Plaintiffs would have been billed under the previous fee structure based on compressed average price tickets, Penson claimed that the parties agreed that Plaintiffs would be granted a ten percent

---

[2] The parties entered into a separate settlement agreement that applied to all claims arising prior to November 1, 2007.

discount on all fees, which was increased in May 2007 to 15 percent. Beginning in March 2008, however, Penson alleged that Plaintiffs unilaterally began applying much larger discount rates, reducing their bills by 76 percent for the next two months. From May 2008 until the termination of their agreements at the end of June of that year, Penson claimed that Plaintiffs stopped paying entirely. Based on those allegations, Penson asserted counterclaims against the Plaintiffs for breach of contract, unjust enrichment, and quantum meruit, in which it sought compensatory damages of $1,362,768.[3]

The parties engaged in roughly 11 months of discovery following the filing of Plaintiffs' arbitration complaint. During that time, they exchanged thousands of pages of documents and submitted extensive pre-trial memoranda to the arbitration panel. That panel was made up of three individuals with expertise in the relevant subject matter – one was an executive at a major financial firm and the other two were securities lawyers. The arbitration panel held a three-day evidentiary hearing on June 2, 3, and 10, 2009, at which the parties were allowed to call witnesses and submit exhibits in support of their claims. Following that hearing, each side was given approximately one month to file a final brief summarizing its arguments. They did so on July 8, 2009.

One month later, on August 7, 2009, the arbitration panel issued its decision. Without including an opinion or any other explanation of its ruling other than a brief procedural history, it stated that:

> After considering the pleadings, the testimony and evidence presented at the hearing, the Panel has decided in full and final resolution of the issues submitted for determination as follows:
>
> 1.   Claimaints' claims are denied in their entirety.

---

[3] Penson originally sought damages of $1,570,000. By the close of the arbitration proceedings, it had reduced that figure to $1,362,768. The parties have used the latter figure throughout their arguments in connection with the pending Motion.

6

   2. ABS is liable for and shall pay to [Penson] compensatory damages in the amount of $820,000.00.

   3. Any and all relief not specifically addressed herein, including punitive damages, is denied.

(Cuccaro Decl., Ex. 4.)

## II. DISCUSSION

Plaintiffs contend that this Court should exercise its power under the FAA to vacate that award because the arbitrators "exceeded their power by acting in manifest disregard of the law and the facts." (Pls.' Br. Supp. Mot. Vacate 17.) In support of that assertion, they present three main arguments. First, they claim that Penson's primary argument during the arbitration proceedings – that the contracts between the parties were orally modified – should have been rejected because those agreements explicitly provided that any modification of their terms must be agreed to in writing. See (Id. at 22-23 (citing (Cuccaro Decl., Exs. 1-3 at ¶ 20(f))).) Since the arbitrators apparently accepted Penson's argument, Plaintiffs argue that "their decision was in manifest disregard of the law" and must be vacated. (Id. at 24.)

As further support for their contention that the arbitrators acted in disregard of the law and facts, Plaintiffs cite what they claim are irreconcilable discrepancies between the damages sought by the parties during the arbitration and the ultimate award. They note that the amount granted to Penson – $820,000 – was the almost exactly the same amount Plaintiffs claimed they suffered due to being billed based on individual orders rather than average price tickets. Though they do not explicitly say so, Plaintiffs essentially contend that the arbitrators must have intended to award that amount to ABS, but mixed up the parties. See (Id. at 18) ("The only conceivable link between the panel's award of $820,000 and the evidence adduced at the arbitration

7

underscores the award's irrationality. It was ABS, not Penson, that claimed it was owed $820,000.")

Finally, Plaintiffs assert that the arbitrators ignored their claims seeking reimbursement for deposits paid to Penson and the rebates that company received from the NSCC. Penson conceded that Plaintiffs were entitled to $170,000 in deposits and $292,000 as reimbursement for NSCC rebates, but argued that those amounts should be offset from its total claimed damages of $1,362,768. See (Cuccaro Decl., Ex. 5 at 18 (stating that the amount of Plaintiffs' deposits "should be set off from the amount ABS ultimately pays Penson in this case"), and 17-18, n.14 (noting that Penson received $292,000 in NSCC rebates and stating that "ABS is entitled to an offset for the rebate").) In light of that concession, Plaintiffs contend that the first of the arbitration panel's three holdings – in which it rejected their claims entirely – was unsupportable and disregarded the relevant facts. In assessing those arguments, the Court must apply the standard of review applicable to requests to vacate or confirm an arbitration award pursuant to the FAA.

**A. Standard of Review**

The FAA provides for expedited judicial review of arbitration awards. Hall St. Assocs., LLC v. Mattel, Inc., 552 U.S. 576, 578 (2008). The mechanisms for enforcing such judgments – "a judicial decree confirming the award, an order vacating it, or an order modifying or correcting it" – are provided by Sections 9-11 of the Act. Id. at 582. "Under the terms of § 9, a court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed'

in §§ 10 and 11." Id. "Section 10 lists grounds for vacating an award, while § 11 names those for modifying or correcting one."[4] Id.

> Under § 10 of the FAA, a court may vacate an arbitration award in cases where:
>
> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

In its 2008 decision in Hall Street, the Supreme Court held that a court reviewing an arbitration award pursuant to the FAA may not vacate that award for any reason other than those set forth in § 10. 552 U.S. at 579 (holding that the "statutory grounds" for vacatur or modification of such awards are "exclusive"). Prior to that decision, it had long been established that an arbitration award could be vacated "if there [wa]s no support in the record for its determination or if it reflect[ed] a manifest disregard of the agreement" between the parties. Exxon Shipping Co. v. Exxon Seamen's Union, 993 F.2d 357, 360 (3d Cir. 1993); see also Local 863 Int'l Bhd. of Teamsters v. Jersey Coast Egg Prod., Inc., 773 F.2d 530, 533 (3d Cir. 1985) ("An award may be set aside only in limited circumstances, for example, where the arbitrator's decision evidences manifest disregard for the law rather than an erroneous interpretation of the law."). The ruling in Hall Street did not make it clear whether the "manifest disregard of law"

---

[4] Neither side contends that the arbitration award at issue in this case should be modified or corrected under § 11 of the FAA. Therefore, the Court will direct its analysis only to the standards for vacatur contained in § 10 of that statute.

9

standard remains valid. In fact, that ruling specifically noted the vague origins of the "manifest disregard" standard, and stated without adding further explanation that "[m]aybe the term … was meant to name a new ground for review, but maybe it merely referred to the § 10 grounds collectively" or was "shorthand for § 10(a)(3) or § 10(a)(4)." Id. at 585. The Court of Appeals for the Third Circuit has yet to address the question of whether "manifest disregard of law" still justifies vacating an arbitration award, and other circuits have issued conflicting decisions on that point. Compare Frazier v. CitiFinancial Corp., LLC, 604 F.3d 1313, 1324 (11th Cir. 2010) (ruling that Hall Street "compels the conclusion" that the "judicially-created bases for vacatur" such as "manifest disregard of law" are "no longer valid") and Citigroup Global Mkts. v. Bacon, 562 F.3d 349, 355 (5th Cir. 2009) ("In light of Hall Street's repeated statements that … 'the statutory grounds are exclusive,'" manifest disregard of law no longer justifies vacatur.) with Lagstein v. Certain Underwriters at Lloyd's, London, --- F.3d ----, 2010 WL 2303317 at *4 (9th Cir. 2010) (applying the standard) and Telenor Mobile Commc'ns AS v. Storm, LLC, 584 F.3d 396, 407 n.6 (2d Cir. 2009) ("[W]e read Hall St. to hold that the FAA set forth the 'exclusive' grounds for vacating an arbitration award, and that the term 'manifest disregard' was merely a 'judicial gloss' on some of those grounds.").

Even if "manifest disregard of the law" continues to form a valid basis for vacatur – an issue not decided in this ruling[5] – that standard applies only in "exceedingly narrow circumstances." Metromedia Energy, Inc. v. Enserch Energy Servs., Inc., 409 F.3d 574, 578 (3d

---

[5] In this case, Plaintiffs contend that the arbitrators "exceeded their powers" by acting in "manifest disregard" of both the law and facts. That argument is obviously directed to § 10(a)(4), and appears to use the "manifest disregard" standard only as a means of interpreting the statutory grounds for vacatur contained therein. Because the Court finds that the arbitrators did not disregard the applicable law and did not exceed their powers by any other means, it need not rule directly on either the ongoing applicability of the "manifest disregard" standard or the validity of Plaintiffs' use of that standard as a supplement to the statutory language contained in § 10(a)(4).

Cir. 2005). "[A] federal court may not overrule an arbitrator's decision simply because the court believes its own interpretation of the contract would be the better one." W.R. Grace & Co. v. Local Union 759, Int'l Union of Rubber, Cork, Linoleum, & Plastic Workers of Am., 461 U.S. 757, 764 (1983). "Nor may a court disturb an arbitrator's award because it finds an error of law." Local 863, 773 F.2d at 533. To the contrary, it is well-established that "a court may not review the merits of [an] arbitral decision." News Am. Publ'ns, Inc. v. Newark Typographical Union Local 103, 918 F.2d 21, 24 (3d Cir. 1990). An arbitrator's decision must be "totally unsupported by the principles of contract construction and the law" to constitute "manifest disregard." Id.; see also Exxon Shipping, 993 F.2d at 360. Thus, "[a]s long as the arbitrator has arguably construed or applied the contract, the award must be enforced, regardless of the fact that a court is convinced that arbitrator has committed a serious error." News Am., 918 F.2d at 24 (emphasis in original).

The standard of review applicable to findings of fact is similarly narrow. "[A]n arbitrator's improvident, even silly, factfinding does not provide a basis for a reviewing court to refuse to enforce the award." Metromedia, 409 F.3d at 578 (quotations omitted); see also News Am., 918 F.2d at 24 ("An arbitral award may not be overturned for factual error, or because the court disagrees with the arbitrator's assessment of the credibility of witnesses, or the weight the arbitrator has given to testimony."). Put simply, a reviewing court "may not second-guess the arbitrator's fact-finding." Exxon Shipping, 993 F.2d at 360 (quotations omitted).

**B. The Pending Motions**

In light of that deferential standard, Plaintiffs' arguments in favor of vacatur are unavailing and the arbitration award must be confirmed. The first of those arguments – that the arbitrator's should have rejected Penson's claim that the contracts between the parties were

11

orally modified due to the fact that those contracts expressly stated that any modification must be in writing – essentially asserts that the decision was based on an error of law. As discussed above, absent evidence that the arbitrators' decision was totally unsupported by the applicable law, such a claim cannot form the basis for vacatur. News Am., 918 F.2d at 24; Exxon Shipping, 993 F.2d at 360.

Far from being "totally unsupported," it appears that the arbitrators' decision in this case was the result of an arguably-valid interpretation of the contracts between the parties. Although those contracts specified that they could be "modified only in a writing signed by both parties," (Cuccaro Decl., Exs. 1-3 at ¶ 20(c)), they also stated that their terms would be construed in accordance with "the statutory and common law of the state of Texas." (Id. at ¶ 20(f).) Penson argued during the arbitration proceedings that Texas law permits a written contract to be modified by a subsequent oral agreement even when the written contract includes a clause prohibiting such modifications, and submitted case law holding to that effect. See (Cuccaro Decl., Ex. 7 at 5-6 (Penson's pre-hearing arbitration brief, citing Schwartz v. NMS Indus., Inc., 517 F.2d 925, 929 (5th Cir. 1975) ("It is clear that under Texas law, the parties to a written agreement may subsequently make oral modifications to that agreement."); Ramirez v. Flores, 2006 WL 927295 at *4 ("Texas law permits a written contract … to be modified by a subsequent oral agreement even though the written contract contains a clause prohibiting oral modification of the agreement.")).) At least one case, not cited by either party, contains a binding statement of law that supports Penson's argument. See Hyatt-Cheek Builders-Eng'rs v. Bd. of Regents, 607 S.W.2d 258, 265 (Tex. Ct. App. 1980) ("A written contract, not required by law to be in writing, may be modified by subsequent oral agreement, even if it provides that it can be modified only by a written agreement.").

Similarly, Penson submitted to the arbitration panel case law tending to show that the purported oral modification of its contracts with Plaintiffs would not have violated the statute of frauds. See (Cuccaro Decl., Ex. 5 at 10 (Penson's post-hearing brief, citing Exxon Corp. v. Breezevale, Ltd., 82 S.W.3d 429, 439 (Tex. Ct. App. 2002) ("Under the partial-performance exception to the statute of frauds, a court may enforce an oral contract that has been partially performed if enforcement is necessary to prevent a virtual fraud."); Mercer v. C.A. Roberts Co., 570 F.2d 1232, 1236 (5th Cir. 1978) ("Texas courts have, in many situations, held that full or partial performance of an oral agreement by one party precludes invocation of the statute of frauds by the other.")).)  In light of those precedents, it appears that there was at least some basis on which the arbitration panel could have ruled that the contracts between Plaintiffs and Penson were orally modified.  Therefore, the arbitrators did not act in "manifest disregard" of the law, even if their ruling was ultimately erroneous.  News Am., 918 F.2d at 24 ("As long as the arbitrator has arguably construed or applied the contract, the award must be enforced, regardless of the fact that a court is convinced that arbitrator has committed a serious error.") (emphasis in original).

Nor did the arbitrators exceed their power by acting in "manifest disregard" of the facts. Plaintiffs' arguments to that effect – that the arbitration panel (1) ultimately awarded Penson an amount of damages that was almost exactly the same as the sum Plaintiffs claimed they lost due to overbilling and (2) ignored their claims for $170,000 in deposits and $292,000 in NSCC rebates – are, in essence, an invitation for this Court to review the arbitrators' factual determinations.  It is prohibited from doing so.  Exxon Shipping, 993 F.2d at 360.

Even if it could, the Plaintiffs' contention that the arbitration panel "acted irrationally," (Pls.' Br. Supp. Mot. Vacate 17), would be unavailing.  The panel did not include an explanation

13

of how it determined the amount of damages. Therefore, whether or not the damages awarded to Penson were supported by the record cannot be proven. An examination of the Plaintiffs' arguments in support of their Motion reinforces that fact: Plaintiffs devote a great deal of their papers to mathematical calculations purporting to show that, even if the arbitration panel awarded Penson its claimed damages ($1,360,851), but discounted that award by the amount it had already been paid in deposits ($170,000) and NSCC rebates ($292,000), the resulting sum would have been $898,851 – almost $70,000 more than the amount ultimately awarded.[6] See (Id. at 18.) What Plaintiffs cannot show, and what is fatal to their argument, is that the arbitrators did not make a factual finding supported by the record before them that the damages awarded to Penson should be discounted by that amount. It is precisely to stop courts like this one from being forced to engage in such an inquiry that the FAA prohibits review of an arbitration panel's findings of fact. See Hall St., 552 U.S. at 558 (Allowing more searching review would frustrate the purpose of the FAA by "open[ing] the door to full-bore legal and evidentiary appeals that c[ould] render informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process.").

---

[6] The precise figures contained in Plaintiffs' papers vary from those used in this ruling, presumably due to the fact that the amount damages claimed by the parties have evolved over time. For the sake of simplicity, the Court has referred above to the amounts discussed throughout this decision rather than using those cited by Plaintiffs. The variations in those amounts do not affect the overarching principle being discussed: that it is impossible to say with certainty whether the amount of damages awarded by the arbitrators was irrational.

## III.  CONCLUSION

For the reasons set forth above, the Plaintiffs' Motion to Vacate the arbitration award will be denied, and Penson's Motion to Confirm that award will be granted.

The Court will enter an Order implementing this Opinion.

 s/ Dickinson R. Debevoise_____ \_\_\_\_
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated:  July 8, 2010